UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRENDA DIXON,

        **Plaintiff,**

    v.

OFFICER EUGENE REED III,
WARDEN SHELLY BAKER,

        **Defendants,**

_____/

**Case No.: 5:25-cv-00421-WFJ-PRL**

## ORDER

THIS CAUSE comes before the Court on Defendants Officer Eugene Reed ("Officer Reed") and Warden Shelly Baker's ("Warden Baker") motion to dismiss Plaintiff's complaint and incorporated memorandum of law (Doc. 17). Ms. Dixon filed a response in opposition. (Doc. 19). For the reasons stated below, the Defendants' motion to dismiss is granted in part and denied in part.

### I.    Background

For purposes of this motion, the Court accepts Ms. Dixon's factual allegations as true. While she was sleeping in her bunk on the morning of October 7, 2024, Officer Reed entered Ms. Dixon's cell at Lowell Correctional Institute – Annex ("Lowell CI"). (Doc. 1 at 5). Ms. Dixon's head and body were covered by her hijab. *Id.* Officer Reed allegedly stood over Ms. Dixon and "snatched" the hijab, removing it from her. *Id.* at 5–6. Before he removed the hijab, Officer Reed made contact with Ms. Dixon's left breast and gave it "a slight squeeze." *Id.* at 5. Officer Reed then told Ms. Dixon's

cellmate that "She didn't see anything" and he left the cell. *Id*. at 6. Ms. Dixon then yelled "I'm going to report you to the O.I.C." *Id.* Officer Reed turned around with his hand near his pepper spray canister and ordered Ms. Dixon to go to the foyer. *Id*. Ms. Dixon was ordered to put her hands on the wall and to submit to hand restraints. *Id.* Officer Reed first put leg shackles on Ms. Dixon "so rough" that both ankles were cut and bled. *Id*. Ms. Dixon was then put in handcuffs that were so tight they cut off circulation to both hands. *Id.* Ms. Dixon began screaming to the officer in the control room for help to no avail. *Id.* Officer Reed left and locked Ms. Dixon in the foyer. *Id*.

Sergeant Conklin and then Captain Santiago arrived at the foyer sometime later. *Id.* at 7. They told Ms. Dixon to calm down and sent her to medical. *Id.* Ms. Dixon attempted to file a Prison Rape Elimination Act ("PREA") report with the triage nurse during her evaluation. *Id.* Sergeant Conklin told Ms. Dixon she could file the report after she arrived in confinement. *Id.* The nurse documented Ms. Dixon's injuries and Ms. Dixon was sent to the S-Dorm holding cell. *Id*. Ms. Dixon attempted to report the PREA incident to eleven different prison staff members, but all of them ignored her and would not initiate the PREA protocol. *Id.* While she was still in the holding cell Captain Santiago threatened to spray Ms. Dixon in the mouth after Ms. Dixon questioned why Captain Santiago didn't believe her accusations. *Id*.

Three days after the incident with Officer Reed, Ms. Dixon was able to report the PREA incident. *Id*. She claims that none of the staff knew how the process worked

2

or what to do. *Id.* Ms. Dixon blames Warden Baker for her failure to train the staff on this process. *Id.*

Officer Reed filed a "falsified disciplinary report" against Ms. Dixon for disorderly conduct and she was given a 30-day canteen restriction. *Id.* at 8. In November 2024, Ms. Dixon was transported to Homestead Correctional Institution. *Id.* On March 1, 2025, she was transported back to Lowell CI for a CAT scan. *Id.* Since Ms. Dixon has been back at Lowell CI, Officer Reed has verbally abused, taunted, and intimidated her. *Id.* Ms. Dixon claims that she was "done with medical" in March but remained at Lowell CI. *Id.* at 9. Ms. Dixon claims that Warden Baker failed to protect her by allowing Ms. Dixon to remain on the compound considering her history with Officer Reed. *Id.*

Ms. Dixon sues Officer Reed and Warden Baker, alleging that their conduct violated the Eighth Amendment.[1] *Id.* at 5. Liberally construed, the complaint alleges that (1) Officer Reed violated the Eighth Amendment by sexually abusing Ms. Dixon, (2) Officer Reed violated the Eighth Amendment by using excessive force on Ms. Reed, and (3) Warden Baker violated the Eighth Amendment by failing to protect Ms. Reed from Officer Reed. *See id.* As relief, Ms. Dixon seeks punitive and compensatory damages "for the total amount [of] $250,000.00", court costs, and an "Injunction order" directing Warden Baker to train all staff in PREA Standards, set up a response

---

[1] The complaint does not specify under what capacity the Defendants are being sued. Because Defendants, in their official capacities, are entitled to Eleventh Amendment immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996), the Court will proceed as if Defendants are being sued in their individual capacities.

team for PREA victims, and to enforce PREA. *Id.* at 6, 10. Plaintiff also seeks to be transferred to the Western United States for her safety and protection. *Id.* at 10.

## II.    Standard of Review

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III.    Analysis

Officer Reed and Warden Baker move to dismiss the complaint, arguing (1) Ms. Dixon failed to state an Eighth Amendment claim, (2) qualified immunity bars Ms. Dixon's Eighth Amendment claims, and (3) Ms. Dixon's request for punitive damages must be dismissed. (Doc. 17). After careful review, the Court concludes that Ms. Dixon states a plausible Eighth Amendment claim against Officer Reed for sexual abuse. At this stage of the litigation, Officer Reed is not entitled to qualified immunity for the alleged sexual misconduct. Ms. Dixon fails, however, to state an Eighth Amendment claim based on Warden Baker's failure to protect. Finally, 18 U.S.C. §

3626(a)(1)(A) does not require dismissal of Ms. Dixon's punitive damages requests at the pleading stage.

### A. Eighth Amendment – Sexual Abuse

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012)). To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022) (quoting *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021)). Once this showing is made, the burden shifts to the plaintiff to "show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* at 1340–41 (*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). Thus, a motion to dismiss on qualified immunity grounds "will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

Ms. Dixon does not dispute that Officer Reed acted within the scope of his discretionary authority at all relevant times. (*See* Doc. 1). Accordingly, the Court

considers whether the complaint sufficiently alleges that Officer Reed violated Ms. Dixon's clearly established constitutional rights by subjecting her to sexual abuse.

"[S]evere or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1266 (11th Cir. 2020) (citation omitted). Sexual abuse of "a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021) (citing 18 U.S.C. § 2246(2)). "At a minimum, those sexual acts include intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* (citation omitted). Other types of conduct may qualify as sexual assault depending on the facts of the case. *Id.* at 1197. This "may include conduct that does not require any physical contact with a prisoner." *Id.* at 1197 n.14.

For conduct that does *not* satisfy the foregoing definition of "sexual assault," a contextual, fact-specific analysis is applied to determine whether the conduct qualifies as sexual assault. *Id.* at 1196 n.12; *id.* at 1197 n.15. In other words, whether the conduct qualifies as a sexual assault for Eighth-Amendment purposes "depend[s] on the facts of a given situation." *Id.* at 1197.

6

The Eleventh Circuit has expressly stated that in a case involving an allegation of sexual assault, it is within a fact-finder's purview to "consider things like whether the alleged conduct is of a sexual nature; whether the alleged sexual assault did in fact occur; and whether the prison official intended to sexually gratify himself or acted for the purpose of humiliating, degrading, or demeaning the prisoner." *Id.* at 1197. Ms. Dixon claims that Officer Reed gave her left breast a slight squeeze when it appeared that she was sleeping. (Doc. 1 at 5). Officer Reed then threatened Ms. Dixon's cellmate, saying "She didn't see anything." *Id*. at 6. Taken as true, these allegations plausibly suggest that Officer Reed subjected Ms. Dixon to a sexual act for his "own sexual gratification." *DeJesus*, 14 F.4th at 1196. Alternately, the breast squeeze, coupled with Officer Reed's snatching of Ms. Dixon's hijab, plausibly suggests that it performed "for the purpose of humiliating, degrading, or demeaning" her. *Id*. Because the Court must accept Ms. Dixon's facts as true and view them in the light most favorable to her, she has stated a plausible Eighth Amendment claim based on Officer Reed's alleged sexual assault.

The question thus becomes whether "at the time of the alleged conduct," Officer Reed violated "clearly established law." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017) (citation omitted). The answer to that question is yes, assuming, as the Court must, that Ms. Dixon's allegations are true. "A plaintiff may show that a right was 'clearly established' through: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3)

7

conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)).

A "broad statement of principle" controls here. *Id.* "[T]here is no question that [Ms. Dixon] had a clearly established right to be free from sexual abuse while incarcerated." *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (citation omitted). And every reasonable prison official would have known that the conduct alleged in the complaint—squeezing an inmate's breast for the official's own sexual gratification or to humiliate, degrade or demean the inmate—violated the right to be free from sexual abuse. *See DeJesus*, 14 F.4th at 1196. Thus, at this early stage of the litigation, Officer Reed is not entitled to qualified immunity for the sexual abuse he allegedly inflicted on Ms. Dixon.

### B. Eighth Amendment – Excessive Force

"Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodrguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (citing *Nolin v. Isbell,* 207 F.3d 1253, 1257–58 (11th Cir. 2000)). Here, Ms. Dixon claims that Officer Reed "put the leg shackles on so rough, that both ankles, by the heels, sustained cuts that bleed [sic]" and "lock[ed] each [handcuff] past the last notch" which "cut off circulation to both hands, causing bruising, swelling, pain, and numbness." (Doc. 1 at 6). Ms. Dixon does not allege how long she was restrained, nor does she allege that she made anyone aware that the cuffs were too tight. *See* Doc. 1 at

6–7. "[O]nly the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). The facts as alleged by Ms. Dixon do not rise to this exceptional level. Ms. Dixon has failed to state a claim of excessive force.

### C. Eighth Amendment – Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson* v. *Palmer*, 468 U.S. 517, 526–527 (1984)), but this does not make them "guarantor[s] of . . . prisoner[s'] safety," *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). As such, prison officials are not constitutionally liable for every inmate attack. *Farmer*, 511 U.S. at 832. Instead, it is a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id.* at 828 (citations omitted). The Eleventh Circuit has explained the requirement of deliberate indifference to a substantial risk of serious harm as follows:

> To succeed on a failure-to-protect claim, a plaintiff must satisfy three elements. First, the plaintiff must show that [he] was "incarcerated under conditions posing a substantial risk of serious harm." [*Farmer*, 511 U.S. at 834]. Second, the plaintiff must show that the "prison official had a sufficiently culpable state of mind," amounting to "deliberate indifference." *Id*. Third, and finally, the plaintiff must demonstrate causation—that the constitutional violation caused [his] injuries. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).

*Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021) (citations modified).

9

Recently, the Eleventh Circuit clarified that in accordance with *Farmer*, courts in this circuit should apply the "subjective recklessness" standard as used in criminal law when determining liability on an Eighth Amendment deliberate indifference claim. *See Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc). To satisfy this standard, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [*Farmer*, 511 U.S. at 834].

> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," *id*. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

*Wade*, 106 F.4th at 1262 (enumeration and emphasis omitted).

Under this standard, "liability requires consciousness of a risk." *Farmer*, 511 U.S. at 840. The defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. As such, a prisoner-plaintiff must point to evidence showing "the defendant prison official *actually* knew of a substantial risk of serious harm, not just that he *should have known*." *Wade*, 106 F.4th at 1257 (citation omitted). A prison official cannot be held liable under the Eighth Amendment for not appreciating that a prisoner faced a substantial risk of serious harm, even if "the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 842 ("[A]n official's failure to alleviate a significant risk that he should have

10

perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment.").

Thus, to establish an Eighth Amendment violation, Ms. Dixon must point to evidence permitting the reasonable inference that Warden Baker was deliberately indifferent to conditions that were "sufficiently serious." *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted). Conditions of confinement are "sufficiently serious" only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." *Id*. (citation modified). "Showing a substantial risk of serious harm requires the prisoner to provide evidence that there was a 'strong likelihood' of his injury occurring." *Visage v. Woodall*, 798 F. App'x 406, 408 (11th Cir. 2020) (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). A court's consideration of whether there was a strong likelihood, as opposed to a "mere possibility," of an injury occurring cannot be based on "hindsight bias." *Brooks*, 800 F.3d at 1301. Moreover, isolated incidents do not satisfy the "substantial risk" standard articulated in *Farmer*. *Id.*; *see, e.g.*, *Purcell*, 400 F.3d at 1320 ("[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."); *see also Lakin v. Barnhart*, 758 F.3d 66, 70–72 (1st Cir. 2014) (Souter, J., sitting by designation) (explaining that the risk must be "substantial," not isolated or infrequent, and affirming summary judgment in defendants' favor where plaintiff's evidence did not reach the "substantial" threshold required by *Farmer* as "not every risk carries an inherent threat at a substantial level"). The prisoner must demonstrate

11

that the complained-of condition—most commonly inmate-on-inmate violence—resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Purcell*, 400 F.3d at 1322)).

Here, Ms. Dixon claims that Warden Baker failed to protect her from Officer Reed after she returned to Lowell CI on March 1, 2025, roughly five months after the incident in her cell and after she had been housed at Homestead CI for four months. (Doc. 1 at 8). Specifically, Officer Reed entered the garage where Ms. Dixon and three other inmates were standing, and Officer Reed started humming the theme song from Nightmare on Elm Street, "One, two, Freddy's coming for you." *Id*. Ms. Dixon states she told the escorting officers, the officers in medical, and "Mrs. Johnson" in classifications, but not Warden Baker. *Id.* Ms. Dixon makes no allegations that Warden Baker was aware that Officer Reed was allegedly verbally abusing and taunting Ms. Dixon following her return to Lowell CI in March 2025. *See id.* Further, profane, threatening, or abusive comments made by an officer to an inmate—no matter how repugnant or unprofessional—do not, without more, rise to the level of a constitutional violation. *See Edwards v. Gilbert*, 867 F.2d 1271, 1273, n.1 (11th Cir. 1989) (noting that mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate an inmate's constitutional rights). Accordingly, Ms. Dixon has failed to state a claim.

**D. Failure to Train**

Ms. Dixon claims that Warden Baker is liable for failing to train her employees. (Doc. 1 at 6, 10). "Section 1983 allows supervisors to be held liable for failure to train subordinates only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact." *Bridges*, 155 F.4th at 1317 (citation modified). Ms. Dixon must show "that [Warden Baker] had actual or constructive notice that a particular omission in [her] training program cause[d] [her] employees to violate citizens' constitutional rights, and that armed with that knowledge [Warden Baker] chose to retain that training program." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (citation modified). The bar is high— "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Bridges*, 155 F.4th at 1317 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Ms. Dixon alleges that Warden Baker failed to train all staff in PREA standards. (*See* Doc. 1 at 6, 7–8, 10). Ms. Dixon fails to claim that Warden Baker was aware of this alleged lack of knowledge by her staff regarding the PREA standards and reporting protocols. *See id.* She further fails plead that this was a widespread issue at the prison. *See id.* Accordingly, Ms. Dixon has failed to state a claim.

13

### E. Punitive Damages

Defendants argue that Ms. Dixon's request for punitive damages must be dismissed because it is statutorily barred. *See* Doc. 17 at 14–15. Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Punitive damages are considered "prospective relief" under § 3626. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015). Nevertheless, Defendants' argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is misguided.

While the Court is unaware of an Eleventh Circuit case that has addressed Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021). And it has held "[p]unitive damages

14

are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights.'" *Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017) (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986)). Notably, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an instruction on awarding punitive damages. *See* Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights—42 U.S.C. § 1983 Claims—Damages § 5.13.

The Court also finds persuasive other district court decisions explicitly finding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil cases. *See, e.g.*, *Wright v. Ramos*, No. 3:23CV15676/LAC/ZCB, 2025 WL 542313, at *6 (N.D. Fla. Jan. 14, 2025), *report and recommendation adopted*, 2025 WL 523845 (N.D. Fla. Feb. 18, 2025) (collecting cases); *Douglas v. Jin*, No. 11-0350, 2014 WL 1117934, at *4–5 (W.D. Penn. Mar. 20, 2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms"). Thus, the Court finds that § 3626 does not preclude a request for punitive damages in this § 1983 action, and Defendants' Motion is due to be denied on this issue.

## IV. Conclusion

Accordingly, it is hereby **ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 17) is **GRANTED**, in part, and **DENIED**, in part.

    a. The Motion is **GRANTED** regarding Plaintiff's excessive force, failure to protect, and failure to train claims.

    b. The Motion is **DENIED** regarding Plaintiff's sexual assault claim and Defendants' punitive damages argument.

2. Within 21 days, Defendants must file an answer or otherwise respond to the sexual assault claim in Plaintiff's Complaint.

**DONE** and **ORDERED** at Tampa, Florida, on June 11, 2026.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to**:
Unrepresented Party
Counsel of Record

16